# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Norfolk Division

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.

34 ACRES OF LAND, MORE OR LESS, A/K/A PECK PROPERTY OF PECK IRON AND METAL SUPERFUND SITE LOCATED AT 3850 ELM AVENUE, PORTSMOUTH, VIRGINIA, *in rem*,

    *Defendant.*

Civil Action No. 2:24-CV-487

## UNITED STATES' VERIFIED COMPLAINT IN REM

The United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

### NATURE OF ACTION

1. This is a civil action under Section 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9604(e). The United States seeks an order granting EPA and its authorized representatives immediate and unimpeded entry and access to approximately 34 acres of property located at 3850 Elm Avenue, Portsmouth Virginia ("Property"). The Property is part of the Peck Iron and Metal Superfund Site ("Site"). The requested order would last until EPA determines that all appropriate CERCLA response actions at the Property have been concluded.

2. The Property is owned by three companies: The Peck Company, Inc. ("The Peck Company"), JSP Land Company, Inc. ("JSP"), and Peck-Portsmouth Recycling Company, Inc. ("PPRC") (collectively, the "Companies").

3. The Companies have been listed as inactive and terminated by the Virginia State Corporation Commission as of December 2023.

4. The sole shareholder, officer, director, and member of the Companies—Barry David Peck (also known as "David Peck")—died on July 8, 2023.

5. Mr. Peck's last will dated August 28, 2018, was filed in the Henrico County Circuit Court on September 13, 2023 ("Will").

6. The Will names his three surviving children—Daniel Peck, Mitchell Peck, and Joshua Peck—as executors and, along with their respective descendants, as heirs to Mr. Peck's estate.

7. Daniel Peck, Mitchell Peck, and Joshua Peck have each declined to serve as executors.

8. On behalf of themselves and their descendants, Daniel Peck, Mitchell Peck, and Joshua Peck have each disclaimed any interest in Mr. Peck's estate, which includes the Companies owning the Property.

9. EPA and its representatives need immediate, unimpeded entry and long-term access to the Property to implement necessary CERCLA response actions at the Site.

10. These response actions currently include, among other things, off-site treatment or disposal of principal threat waste (material considered to be highly toxic or highly mobile that generally cannot be reliably contained or would present a significant risk to human health or the environment should exposure occur) and on-site consolidation and capping of low-level threat waste (material that is considered toxic but can generally be reliably contained and would present a lower risk in the event of a release) with a low-permeability cover.

11. Response actions will also include long-term operation and maintenance, five-year reviews, and any additional response actions determined to be necessary to address contamination at the Site, including the Property.

12. Despite extensive efforts to obtain consensual access to the Property, EPA has been unable to identify any person who has the authority to grant consensual access for this long-term access.

13. This Court previously granted EPA an administrative warrant and extension to complete certain response actions and secure the Property. *In re Peck Iron & Metal Superfund Site*, No. 2:23-mc-20 (E.D. Va.), ECF No. 3, Admin. Warrant to Enter & Access Property (Nov. 16, 2023), ECF No. 6, Extension & Mod. of Admin. Warrant to Enter & Access Property (Feb 15, 2024) ("*In re Peck Iron*").

14. The administrative warrant remains in effect until November 11, 2024.

## JURISDICTION AND VENUE

15. This Court has exclusive jurisdiction over the subject matter of this action under Sections 104(e) and 113(b) of CERCLA, 42 U.S.C. §§ 9604(e) and 9613(b), and 28 U.S.C. §§ 1331 and 1345, and Federal Rule of Civil Procedure 4(n)(1).

16. Venue is proper in this judicial district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the Property is located in this district and these claims arise in connection with releases of hazardous substances that have occurred in this district.

## DEFENDANT

17. The Property is comprised of City of Portsmouth Tax Parcels 03860020, 03860025, 03860026, 03860028 and 03860029) (collectively, "Peck Parcels"):

   a. Tax Parcel 03860020 is owned by JSP.

   b. Tax Parcel 03860025 is owned by JSP.

      c. Tax Parcel 03860026 is owned by PPRC.

      d. Tax Parcel 03860028 is owned by JSP.

      e. Tax Parcel 03860029 is owned by The Peck Company.

18. At the time of his death, David Peck was the only shareholder of The Peck Company.

19. JSP and PPRC are wholly owned subsidiaries of The Peck Company.

20. Mr. Peck was the only officer, director, member, or contact person for each of the Companies.

## STATUTORY BACKGROUND

21. Section 104(e)(1) of CERCLA, 42 U.S.C. § 9604(e)(1), authorizes the President, his employees, and his duly designated representatives to enter a vessel facility, establishment, or other place of place or property "if there is a reasonable basis to believe there may be a release or threat of release of hazardous substance or pollutant or contaminant."

22. Section 104(e)(1) of CERCLA, 42 U.S.C. § 9604(e)(1), authorizes the President, his employees, and his duly designated representatives to enter a vessel, facility, establishment, or other place or property to determine the need for response, to choose or take any response action under CERCLA, or otherwise to enforce the provisions of CERCLA.

23. Section 104(e)(3)(A)–(D) of CERCLA, 42 U.S.C. § 9604(e)(3)(A)–(D), sets forth the locations to which entry is authorized, which include, but are not limited to, any facility, establishment, place, or property: "where any hazardous substance or pollutant or contaminant may be or has been generated, stored . . . [or] disposed of . . ."; "from which or to which a hazardous substance or pollutant or contaminant has been or may have been released . . ."; where such release

4

is or may be threatened . . ."; or "where entry is needed to . . . effectuate a response action under this subchapter."

24. Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), defines "facility" to include "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located. . . ."

25. Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), defines "hazardous substance" to include "any element, compound, mixture, solution, or substance designated" pursuant to EPA's designation authority under CERCLA Section 102, 42 U.S.C. § 9602.

26. Section 102(a) of CERCLA, 42 U.S.C. § 9602(a), authorizes EPA to designate as "hazardous substances" "such elements, compounds, mixtures, solutions, and substances . . . [that] when released into the environment may present substantial danger to public health or welfare or the environment."

27. EPA's designated hazardous substances are listed in 40 C.F.R. § 302.4.

28. Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), defines "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment . . . ."

29. Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), defines "response" to mean "remove, removal, remedy, and remedial action . . . includ[ing] enforcement activities related thereto."

30. Section 104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B), authorizes the President, through the Attorney General, to commence a civil action to compel compliance with a request or order for entry or inspection, and states in pertinent part:

> Where there is a reasonable basis to believe there may be a release or threat of a release of a hazardous substance or pollutant or contaminant, the court shall take the following actions:
>
> (i) In the case of interference with entry or inspection, the court shall enjoin such interference or direct compliance with orders to prohibit interference with entry or inspection unless under the circumstances of the case the demand for entry or inspection is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.

31. Section 104(e)(6) of CERCLA, 42 U.S.C. § 9604(e)(6), further provides that nothing in Section 104(e) "shall preclude the President from securing access or obtaining information in any other lawful manner."

32. The President's authority under Section 104 of CERCLA, 42 U.S.C. § 9604, has been delegated to EPA pursuant to Executive Order No. 12580. This authority was further delegated to EPA Regional Administrators by EPA Delegation 14-6, and from the EPA Region III Regional Administrator to, among others, Remedial Project Managers by EPA Region III Delegation 14-6.

## GENERAL ALLEGATIONS

### Peck Iron and Metal Superfund Site

33. The Site is a U-shaped plot of land that consists of approximately 37 acres located in Portsmouth, Virginia, and includes the 34-acre Property.

**Figure: Property Layout**[1]

34.     The Property borders Paradise Creek, which is a tidally influenced tributary to the Southern Branch of the Elizabeth River in the Chesapeake Bay watershed.

35.     For CERCLA response purposes, the Site has been divided into two Operable Units:

    a.  Operable Unit 1 ("OU1") encompasses soils, including fill material (i.e., soil, rocks, and other similar material not indigenous to the Site), and estuarine wetland sediments on or near the Site.

    b.  Operable Unit 2 ("OU2") includes groundwater as well as sediments in Paradise Creek and the adjoining tidal wetlands.

---

[1] *See* Ex. A (Property Layout). Note, EPA cannot map out the extent of OU2 at this time as the groundwater comprising OU2 has not yet been delineated.

36. The Property makes up the majority of the Site.[2]

37. The Companies operated a scrap metal storage, processing, and recycling facility ("Facility") at the Site. The Facility purchased, processed, stored, and shipped this scrap metal from various military bases, other federal, state, and local government agencies, and local businesses.

38. Operation of the Facility resulted in the contamination of soil, fill material, estuarine wetland sediment, and groundwater at the Site with hazardous substances.

39. These hazardous substances include but are not limited to Polychlorinated biphenyls ("PCBs"), radionuclides, asbestos, and lead.

40. Between 1996 and 2008, EPA performed various environmental investigations at the Site.

41. On November 3, 2009, EPA added the Site to the National Priorities List.

42. At all relevant times, the Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9) because hazardous substances have been deposited, stored, disposed of, or placed" there.

EPA's Response Actions To-Date

43. In 2019, EPA completed the Remedial Investigation for OU1, in which EPA characterized the hazardous substances found in OU1 soils and sediments to determine the nature of the hazardous substances and assess risk to human health and the environment. EPA concluded

---

[2] Since the administrative warrant extension, EPA has discovered that a narrow strip of land bifurcating Tax Parcels 03860025 from Tax Parcels 03860020 and 03860028 belongs to the City of Portsmouth and is not part of the Property. *See* Ex. A. This segment of land served as a former service road running in an east-west direction. EPA is not seeking access to this segment of land through this action and will work with the City of Portsmouth on securing access, if necessary, to this piece of land.

that OU1 contains large volumes of soil, fill material, and sediment contaminated with PCBs, Radium-226 ("Ra-226") and Ra-226 progeny, asbestos, and heavy metals, including but not limited to lead, chromium, and mercury.

44. During the OU1 Remedial Investigation, EPA also began characterization of hazardous substances in OU2 media—i.e., groundwater on the Property as well as sediment in Paradise Creek. EPA concluded that groundwater on the Property and surface water and sediment in Paradise Creek were contaminated with similar hazardous substances found at OU1, including but not limited to, Ra-226, PCBs, lead, arsenic, and other heavy metals.

45. In 2021, EPA completed the OU1 Feasibility Study, which evaluated alternatives to remediate the hazardous substances found in the soils and sediments on the Property.

46. In March 2022, EPA concluded a Removal Action on the Property to reduce risks posed by the release or threat of release of radioactive material. EPA removed radioactive debris from the Site and installed perimeter fencing to secure the eastern portion of the Site.

47. On July 2023, EPA issued a Record of Decision for OU1 ("OU1 ROD"), which describes the unacceptable risks to human health and the environment from the contaminated soil, fill material, and sediment at the Site. The OU1 ROD also identifies the selected Remedial Action to address this contamination.

48. On November 16, 2023, this Court issued a 90-day administrative warrant to enter and access the Property to allow EPA to perform sampling and other response activities necessary to complete the Remedial Design for OU1's selected Remedial Action. *In re Peck Iron*, ECF No. 3, Granting Admin. Warrant to Enter & Access Property.

49. On February 15, 2023, this Court granted a 270-day extension and modification of the administrative warrant to allow EPA to address the unforeseen discovery of unexploded

ordnances and radioactive material. *Id.* ECF No. 6, Extension & Mod. of Admin. Warrant to Enter & Access Property. The extended and modified administrative warrant remains in effect until November 11, 2024.

<u>The Need for Access to the Property by EPA and its Representatives</u>

50. EPA needs access to the Property to conduct response actions to effectuate or support the remedial action for the Site selected by the OU1 ROD and any future selected remedies for either OU1 or OU2, including but not limited to:

   a. Conduct a Remedial Investigation for OU2 to collect data and further characterize the Site to address the contaminated groundwater and sediments in Paradise Creek and adjoining tidal wetlands that comprise OU2. EPA's work during the OU2 Remedial Investigation may include but is not limited to: installing and sampling monitoring wells, testing aquifer drawdown and recovery, testing aquifer tidal response, performing radiological surveys, and sampling sediment and porewater.

   b. Conduct Remedial Designs for OU1 and OU2 to design the technical specifications for selected remedies.

   c. Conduct Remedial Actions for OU1 and OU2 to construct or implement selected remedies.

51. In addition to the remediation activities identified above, the remedies for OU1 and OU2 will require access to the Property for long-term operation and maintenance and to conduct five-year reviews to ensure that the remedies continue to perform as intended and remain protective of human health and the environment. Such activities may include monitoring of impacted media and implemented institutional controls.

52. At all times relevant to this action, hazardous substances such as PCBs, radionuclides including Ra-226 and its progeny, asbestos, and lead remain on the Site, including the Property.

53. PCBs are hazardous substances designated at 40 C.F.R. § 302.4(a) and within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

54. Radionuclides are hazardous substances designated at 40 C.F.R. § 302.4(a) and within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

55. Asbestos is a hazardous substance designated at 40 C.F.R. § 302.4(a) and within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

56. Lead is a hazardous substance designated at 40 C.F.R. § 302.4(a) and within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

57. The presence of hazardous substances in the soil, sediment, and groundwater at the Property provides EPA with reasonable basis to believe that there is a release or threatened release of hazardous substances, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), at the Property.

58. Entry and access to the Property is necessary to effectuate a response action as defined by Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), to protect human health, welfare, and the environment.

59. As detailed below, the United States has exhausted all reasonable means for identifying and obtaining access from any owner(s) of the Property and now requires an order from the Court in aid of access so that EPA can effectuate its response to the contamination at the Property.

EPA's Efforts to Obtain Consent for Access

60. Access to the Property is necessary to conduct the proposed work described in Paragraphs 50–51.

61. EPA Senior Civil Investigator Carlyn Winter Prisk investigated the ownership of the Property by reviewing the current quitclaim deeds for each of the Peck Parcels recorded with the City of Portsmouth and the City of Portsmouth's Real Estate Assessment Data & Tax Map Search.

62. The quitclaim deeds for each of the Peck Parcels recorded with the City of Portsmouth and the City of Portsmouth's Real Estate Assessment Data & Tax Map Search list either The Peck Company, JSP, or PPRC as the current owner of each Peck Parcel, as described in Paragraph 17.

63. In his capacity as President of the Companies, Barry David Peck had routinely granted EPA access to the Property to conduct CERCLA investigations and response actions.

64. In May 2023, EPA held a phone call with Mr. Peck to discuss further consensual access. During that call, Mr. Peck expressed an intent to provide continued access to the Property so that EPA could continue cleanup of the Property.

65. On July 8, 2023, Mr. Peck died before granting consent to access the Property.

66. EPA then undertook extensive efforts to identify another representative of the Companies with authority to grant EPA access to the Property.

67. EPA issued information requests under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e); used the Virginia State Corporation Commission Entity Search; communicated with an attorney who assisted with the initial administration of Mr. Peck's estate; and reviewed documents filed with the Henrico County Circuit Court related to the administration of Mr. Peck's estate.

68. As of the date of filing this Verified Complaint, the Companies are the current owners of the Property.

69. This information was confirmed by Pamela Belleman, who served as the Registered Agent for each of the Companies until she filed her formal resignation on August 24, 2023. *See* Ex. B (Belleman Information Request Response); Ex. C (Virginia State Corporation Commission Letters Confirming Registered Agent Resignation).

70. Mr. Peck's Will names Daniel Peck, Mitchell Peck, and Joshua Peck as executors of Mr. Peck's estate. *See* Ex. D (Will).

71. The Will also identifies Daniel Peck, Mitchel Peck, and Joshua Peck, along with their descendants, as Mr. Peck's heirs. *See id*.

72. The Will identifies no other heirs. *See id*.

73. On September 13, 2023, Daniel Peck, Mitchell Peck, and Joshua Peck each filed Waivers of Qualification with the Henrico County Circuit Court to decline to serve as executors for Mr. Peck's estate. Ex. E. (Waivers of Qualification).

74. Daniel Peck, Mitchell Peck, and Joshua Peck, along with their descendants, have disclaimed any interest in Mr. Peck's estate. Ex. F. (Decl. of Heather Szjada) (hereinafter "Szjada Decl."). These disclaimers were filed with the Clerk of the Court for Henrico County Circuit Court on December 15, 2023, pursuant to the Virginia Uniform Disclaimer of Property Interests Act, Va. Code § 64.2-2610. *Id.*; *see also* Ex. G (Disclaimers of Interest).

75. Stock in The Peck Company is one of the assets in Mr. Peck's estate, according to Heather Szjada, an attorney who assisted in the initial administration process of Mr. Peck's estate. Szjada Decl. ¶ 6.

76. According to Ms. Szjada, no individual, creditor, entity, or otherwise interested person has contacted Ms. Szjada to administer Mr. Peck's estate. Ms. Szjada stated that she has no reason to believe that any person would step forward to serve as administrator given the state of the assets and liabilities of Mr. Peck's estate.

77. Pursuant to Section 107(l) of CERCLA, 42 U.S.C. § 9607(l), EPA filed a "Notice of Federal Superfund Lien" against the Property on June 4, 2010. *See* Ex. H (June 1, 2010 Federal Superfund Lien). This notice informs interested parties that the United States holds an estimated $70,617,973 lien on the Property—arising out of both incurred and projected future costs of removal and/or remedial CERCLA actions at the Property. *Id.*

78. The Virginia State Corporation Commission's website lists The Peck Company, JSP, and PPRC as "inactive" and "automatically terminated" as of December 31, 2023, December 1, 2023, and December 1, 2023, respectively. *See* Ex. I (Screenshots of Virginia State Corporation Commission pages for Peck Companies).

79. As of the date of filing this Verified Complaint, no one has stepped forward to serve as administrator for Mr. Peck's estate.

80. The probate of Mr. Peck's estate will not be furthered without an executor or an administrator.

81. As of the date of filing this Verified Complaint, there are no identifiable heirs of Mr. Peck's estate.

82. Despite all its aforementioned efforts, EPA has been unable to identify any persons capable of asserting authority or control over the Property.

83. EPA has exhausted all reasonable efforts to identify an owner of the Property to obtain access.

84. The administrative warrant issued by the Court required EPA to post a copy of the warrant at the Property in a location visible to the public. A copy of the warrant, and subsequently the extended warrant, has been posted at the Property continuously since approximately December 4, 2023.

85. As of the date of filing this Verified Complaint, no one has come forward to EPA to identify themselves as an authorized representative of the Companies.

## CLAIM FOR RELIEF

86. The foregoing paragraphs are realleged and incorporated herein by reference.

87. As required by Section 104(e)(1) of CERCLA, 42 U.S.C. § 9604(e)(1), EPA has a reasonable basis for its belief that there has been a release and threat of release of a hazardous substance at the Property.

88. Entry to the Property is authorized under Section 104(e)(3)(A)–(D) of CERCLA, 42 U.S.C. § 9604(e)(3)(A)–(D). This is because EPA seeks entry to the Property, which is a facility at which hazardous substances (such as PCBs, radionuclides, asbestos, lead, among others) have been stored, treated, and/or disposed of. These hazardous substances have been released and may continue to be released into the soils and groundwater at the Property and in nearby surface waters of Paradise Creek and adjoining wetlands. EPA needs entry to conduct the CERCLA response actions to cleanup those media.

89. The activities that EPA and its representatives seek to conduct on the Property are of the type that are authorized by Section 104(e)(1) of CERCLA, 42 U.S.C. § 9604(e)(1).

90. EPA seeks access to the Property to conduct response actions, including to effectuate or support the remedial action for the Property selected by the OU1 ROD and any future selected remedies for either OU1 or OU2.

91. Current selected remedial actions include but are not limited to off-site treatment or disposal of principal threat waste and on-site consolidation or capping of low-level threat waste with a low-permeability cover.

92. Access is also necessary to carry out long-term operation and maintenance and five-year reviews at the Property, and any additional response actions necessary to address hazardous substances released there.

93. EPA has undertaken reasonable efforts to secure access to the Property but has been unable to identify any persons capable of asserting control over the Property and granting such access. No persons objected to the United States' execution of the administrative warrant issued for the Property or to its extension.

94. The absence of any persons capable of asserting authority or control over the Property has interfered and will continue to interfere with efforts to gain access to the Property and to implement the response actions at the Property, and the United States requests the assistance of the Court in effectuating the United States' right of access to the Property under Section 104 of CERCLA, 42 U.S.C. § 9604.

95. EPA and its representatives are entitled to access the Property under Sections 104(e)(1), (3), and (5) of CERCLA, 42 U.S.C. §§ 9604(e)(1), (3), and (5), so that it may respond to the release and/or threat of release of hazardous substances at the Property.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff, the United States of America, respectfully requests that the Court grant the following relief:

A. Issue an order under the authority of Section 104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B) granting EPA and its officers, employees, agents, contractors, and other representatives immediate, full, and unrestricted access to the Property for such duration as is

necessary to effectuate or support response actions at the Property, including those actions selected by the July 6, 2023 OU1 ROD, and to perform any other future response actions that might be selected to address contamination at the Property; and

  B. Grant such other relief as is just and appropriate.

             Respectfully Submitted,

             TODD KIM
             Assistant Attorney General
             Environment and Natural Resources Division
             United States Department of Justice

             /s/ *Sylvia Lam*
             SYLVIA LAM
             Trial Attorney
             MD Bar No. 1512160028
             Environmental Enforcement Section
             Environment and Natural Resources Division
             United States Department of Justice
             P.O. Box 7611
             Washington, DC 20044-7611
             Telephone: (202) 305-4903
             Email: Sylvia.Lam@usdoj.gov

             JESSICA D. ABER
             UNITED STATES ATTORNEY

             /s/ *Sean Jansen*
             Sean Jansen (VSB No. 82252)
             Assistant United States Attorney
             Office of the United States Attorney
             101 West Main Street, Suite 8000
             Norfolk, Virginia 23510
             (757) 441-6331 (Office)
             (757) 441-6689 (Fax)
             Email: sean.jansen@usdoj.gov

OF COUNSEL:

Benjamin Cohan (3RC10)
Senior Assistant Regional Counsel
United States Environmental Protection Agency
Four Penn Center, 1600 John F. Kennedy Blvd.
Philadelphia, PA  19103
Phone: (215) 814-2618
Email: cohan.benjamin@epa.gov

## VERIFICATION BY CARLYN WINTER PRISK

I, Carlyn Winter Prisk, declare as follows:

1. I am employed by the United States Environmental Protection Agency ("EPA") as a Senior Civil Investigator. I have been a Civil Investigator for the Peck Iron and Metal Superfund Site ("Site") since 2021.

2. Through my personal activities concerning the Site, my interactions with colleagues at EPA, and my review of records generated and maintained by EPA regarding the Site, I have personal knowledge of EPA's efforts to identify the owner(s) of and to obtain access to the approximately 34-acre parcel of property at issue here, including those efforts set forth in the foregoing Verified Complaint.

3. If called upon to testify, I could competently testify to the facts set forth in the foregoing Verified Complaint.

4. I verify under penalty of perjury that the factual statements in the foregoing Complaint are true and correct to the best of my knowledge.

Executed August 6th, 2024

*Carlyn Winter Prisk*
Carlyn Winter Prisk, Senior Civil Investigator
U.S. Environmental Protection Agency
Office of Enforcement and Compliance Assurance
Office of Site Remediation Enforcement
Policy and Program Evaluation Division
Program Evaluation and Coordination Branch

Commonwealth of Pennsylvania
County of Berks

Signed and sworn to (or affirmed) before me
on August 6th 2024
by Carlyn Winter Prisk

*Lori Hermann*

Commonwealth of Pennsylvania - Notary Seal
Lori Germann, Notary Public
Berks County
My commission expires April 10, 2028
Commission number 1445499
Member, Pennsylvania Association of Notaries

## VERIFICATION BY VICTORIA SCHANTZ

I, Victoria Schantz, declare as follows:

1. I am employed by the United States Environmental Protection Agency ("EPA"). I have been a Remedial Project Manager for the Peck Iron and Metal Superfund Site ("Site") since approximately 2020 and currently serve as the Site's principal Remedial Project Manager.

2. Through my personal activities on and concerning the Site, my interaction with colleagues and contractors at EPA, and my review of records generated and maintained by EPA regarding the Site, I have personal knowledge of the Site's environmental conditions as well as EPA's past, current, and planned response actions at the Site.

3. If called upon to testify, I could competently testify to the facts set forth in the foregoing Verified Complaint.

4. I verify under penalty of perjury that the factual statements in the foregoing Complaint are true and correct to the best of my knowledge.

Executed ___8/6___, 2024

_____
Victoria Schantz, Remedial Project Manager
U.S. Environmental Protection Agency, Region III
Superfund Remedial Branch
Superfund and Emergency Management Division

Notary: Madeline Gilson
Wheeling

8/6/24

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
MADELINE GILSON
47 Washington Avenue
Wheeling, WV 26003
My Commission Expires 05/24/2028